Fields *v.* Carney.

## L. P. FIELDS *v.* L. H. CARNEY, *et als.*

1. CHANCERY COURT. *Set-off.* A Court of Equity will grant relief under a bill filed to obtain the benefit of a set-off, which was purchased by a defendant in a suit at law after suit brought, when it appears that the plaintiff at law is insolvent.

2. ESTOPPEL. Admissions which have been acted on by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has influenced, whether they were made by express language to the person himself, or implied, from the open and general conduct of the party. Thus, where A, the true owner of a promissory note, has clothed another with the legal title thereto, giving to him the *indicia* of ownership, permitting him to bring suit in his own name, for its collection, thereby inducing the party liable to pay such note, to purchase an equitable set-off against the supposed owner; A, the real owner, will be estopped to assert his ownership to the extent of the amount paid for the set-off by the party liable.

Cases cited: Brazleton *v.* Brooks, 2 Head, 194; Meriwether *v.* Larmon, *et als.*, 3 Sneed, 452; Scott, Baker & Co. *v.* R. C. Bandy, 2 Head, 197; Smith *v.* Ross and Beeler, 3 Hum., 220.

Authorities cited: Rice *v.* Bunce, 8 Am. R., 130; Hefner *v.* Vandolate, 11 Am. R., 42; Hill *v.* Vant, Abbott's N. Y. Digest, §§91, 145.

No record of this case can be found.

FREEMAN, J., delivered the opinion of the Court.

Suit had been brought in 1860, in the name of Carney, who was indorsee of a note for $2,200, given by Woods and Fields—Fields was only a surety on the note. Pleas were filed by defendants to the declaration, among others, one of *non assignavit*, stating that the note had not been regularly assigned to Carney—also a plea of usury. The case thus stood until after the war, when Fields asked leave of the

Court, supported by affidavit, to file a plea *puis dar-rein continuance,* of set-off, alleging the ownership then of a note of upwards of $3,000 on Carney, assigned to him; that he was only a surety on the $2,200 note, and Carney was totally insolvent. A demurrer was filed to the plea, but no action seems to have been had on it. In this state of the case, Fields filed this bill April, 1866, alleging the fact that he was only security of the Messrs. Woods, on the note for $2,200 sued on; that Carney was hopelessly insolvent, as well as the Messrs. Woods, his principals; so that if Carney was permitted to recover and collect the note against him, he would suffer loss to this extent. That he had become the owner, for a valuable consideration, of a note on said Carney, given to one Robertson, for about $3,000; had obtained the same in 1865; that the note was justly due, and prayed to enjoin the prosecution of the suit by Carney, and for an allowance of the note so purchased by him, as an equitable set-off against the note sued by Carney.

Carney answered in September, 1866, admits the suit had been brought in his name on information and belief, but disclaims all personal knowledge of the matter; says the note, in fact, belonged to the Bank of Tennessee, or to Mr. Avent, Trustee of said bank; had been transferred by direction of Avent to Carney, in order to bring suit on it in his name, for collection, but that he had nothing to do with this, and had never owned the note.

After proof had been taken, E. L. Jordan and

Elliott filed a petition in the cause, asking to be allowed to become defendants, and file an answer. This was done in 1869, by order of the Court, to which there seems to have been no exception taken at the time. They filed an answer, in which, among other things, they claim to have purchased the note after the filing of Fields' bill, for valuable consideration, and insist that Carney never owned the note, or had any interest in it, and was not entitled to have his set-off.

The proof shows the facts to be about these : Jo and William Spence were largely indebted to the Bank of Tennessee, in, perhaps, 1858, amounting to over one hundred thousand dollars. Carney and Fletcher were endorsers for the Spence's on this indebtedness. Spence conveyed all his property by deed and bills of sale, consisting of land and slaves, to Carney and Fletcher, to indemnify them against loss. Spence, in his deposition, says, the property he had conveyed to Carney and Fletcher was conveyed to the bank, or rather to Avent, as trustee for the bank. The property was sold for cash notes, the bank having agreed to take the notes on good men. This note of the Woods' and Fields seems to have been one given, as Spence says, for a portion of this property, and was, by Fletcher, to whom it had been endorsed, handed to Avent, the attorney and trustee of the bank, to be collected and paid over to the bank, or held as collateral security for the payment of the Spence debts. Instead, however, of having it endorsed to the bank

or Avent, the trustee, by direction of Avent it was endorsed to Carney, as is said, that it might be collected in his name. What the motive for the course was, is entirely unexplained in the record, and we are at a loss to see any. However, so it seems to have been.

The debt of Spence to the bank was, after the filing of the bill by Fields, and during the pendency of the suit, probably early in 1869, paid by Jordan and Elliot, and they were to have the securities held by the bank for its payment, and thus, they got title to the note of $2,200.

These are the material facts of the case necessary to be considered, in order to settle the right of the parties.

There is a question made as to the regularity of the proceeding in allowing Elliott and Jordan to intervene, and make defence to the bill of Fields. We do not deem it important to settle this question at present. Their rights may be put aside entirely, in the decision of the case, as they purchased the note, or obtained their interest in it, during the pendency of Fields' suit, with full knowledge of complainants' assumed equity, after the note was due, and so far as appears, without even delivery or endorsement of the note to them. In any aspect of the case, they but stand in the shoes of the bank or Spence, whichever was the owner of the note. The real question in the case is, can Fields maintain the equity of the bill as against the bank, and assert his set-off against the note as against that institution.

The set-off could not have been sustained at law, because Fields was not the owner of it at the commencement of the suit; *Brazelton* v. *Brooks*, 2 Head, 196. We think it equally clear, that, if Carney was owner of the note, being insolvent, Fields would be entitled, in equity, to have the set-off sought to be asserted; 2 Head, 197; 3 Hum., 221. But as it is clear Carney does not own the note, has no real interest in it, the question of real difficulty is, can Fields, on the facts of the case, have this relief, so as to defeat the rights of the bank or Spence? If so, it must rest upon the doctrine of estoppel, the bank having put the legal title in Carney, given him the *indicia* of the ownership, the possession of the note, with an endorsement to him, and having, by his attorney and agent, brought suit in his name for its collection, and thereby induced Fields to take such action as would result in his injury, or wrong to him. The principle on which an estoppel *in pais* is based, is, perhaps, really fraud; at any rate, such conduct on the part of the party, as would involve bad faith to assert the contrary to what his conduct had asserted.

The principle is thus quoted with approval by Judge Wright, from Greenleaf on Ev., Vol. 1, §207, in the case of *Meriwether* v. *Larmon, et als.*, 3 Sneed, 452: Admissions which have been acted on by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has influenced. It is of no importance, whether they were made in express language to the person himself,

or implied from the open and general conduct of the party. For in the latter cases, the implied declaration may be considered as addressed to any one, in particular, who may have occasion to act upon it. In such cases the party is estopped on grounds of public policy, and good faith, from repudiating his own representations." See, also, *Rice* v. *Bunce*, 8 Am. R., 130; *Hefner* v. *Vandolate*, 11 Am. R., 42, and authorities cited.

Applying these principles to this case, what is the result. The bank had this note transferred to Carney. It stood in his name, and he was held out to the world as owner. It had gone further, and asserted this fact, as against Fields, with still more emphasis, by suing on it in the name of Carney, the suit brought by her own attorney. The bank could not be permitted to deny the fact, that he was the owner of the note, and entitled to receive the money on it, to the injury of any third party who might be effected by such assertion. If Fields had paid Carney this note, it would have been a valid payment, no notice of the title of the bank being found on him. If judgment had been recovered by Carney, and Fields had, by agreement, satisfied the judgment in property, or in any way, to which Carney assented, it would have been effective as against the bank. If he had interposed any successful defence to Carney's recovery, we take it, the judgment must have been conclusive on the bank, as the bank had put Carney in her place, and would be bound by the result of his suit. If Fields, after purchase of this note, had, by agreement

of Carney, satisfied the note in suit, by crediting its amount on the purchased note, we take it, it would have been a valid arrangement, which the bank could not have disputed. In fact, so far as the bank is concerned, up to the time of filing the bill of Fields, the note was, as to him, the note of Carney, and the bank estopped to deny it. Then, as the note of Carney, Fields had the right, as we have said, when his bill was filed to enforce his equity to a set-off— at any rate to the extent of the amount he had paid, or become liable to pay, for the note. We hold, that, after he has incurred the expense of filing his bill to enforce what was his right, as shown by the conduct of the bank, that bill cannot be defeated, either by the bank, or any party standing in its shoes, as Elliott and Jordan stand in the case. Fields has purchased this note, which we hold he might enforce as an equitable set-off, at any rate, to the amount he has paid for it, against Carney. The bank is estopped from saying it is not Carney's note. It is Carney's note, so far as the bank is concerned, as against a third party, dealing with the holder of the legal title without notice. To allow the bank or Elliott and Jordan to maintain their defence, would be to allow them to defeat one of the rights of Fields, obtained by the purchase of the note, on the assumption that Carney was owner, which assumption, as we have said, the bank was estopped to deny. In other words, Carney was the holder and owner of the note, so far as the bank was concerned as to third parties, and

must stand by all the legitimate results of such ownership, when to assert the opposite, would work an injury to such third party. Fields, in view of his right to set this note off in equity, against the note in the hands of Carney, has purchased the note from Robinson, given his note for $1,600 for it, and, as Robinson says, his verbal promise to pay $400 more when he can collect it.

We think, to the extent of the $1,600, Fields would be injured, by the assertion of the title of defendants, and that Fields is entitled to his set-off; as to the $400, we infer from the proof, it was to be paid in the event Fields got credit for $2,000 against Carney. As we allow only $1,600, the liability actually incurred by the note given, we think he will not be held responsible for more by Robinson. To this extent, we think he is entitled to his set-off; *Hill* v. *Vant*, Abbott's N. Y. Digest, §§91, 145. In a word, he is entitled to be saved from all actual injury that would result to him by reason of the purchase of the note, which was purchased to be used as a set-off, and would not have been purchased, except for this right.

The Chancellor's decree will be reversed, and a decree be entered here, in accordance with this opinion, costs be paid by Jordan and Elliott in this Court and the Court below, from the time they became parties. Carney will pay costs of Court below, up to that time. Fields will pay costs at law, and a decree in favor of Carney for use of Elliott and Jordan for any balance after allowing set-off.